[B.]

## CANNON vs. COPELAND, ADM'R, ET AL.

[BILL IN EQUITY, TO CHARGE ESTATE OF DECEDENT FOR VALUABLE IMPROVE-
MENTS ON THE REAL PROPERTY, MADE BY CONTRACT WITH ADMINISTRATRIX.]

1. *Valuable improvements on real property of intestate, made without the authoity of the proper court; administrator can not charge estate for.*— An administratrix can not charge the estate of her intestate for valuable improvements upon the real property, made without authority from the proper court.

2. *Same; bill in chancery, to charge estate for, devoid of equity.*—A bill in chancery to subject the *corpus* of an estate to the payment of such improvements, is devoid of equity.

APPEAL from Chancery Court of Barbour.
Heard before the Hon. N. W. COOKE.

THIS was a bill in equity, exhibited by appellant, against the administrator *de bonis non* and heirs of John N. Copeland, deceased, and sought an account with the estate for certain valuable improvements erected on the real estate of said decedent, by complainant, under an agreement with the former administratrix of said estate, Mrs. Caroline E. Copeland, a sister of complainant, and now deceased. The bill alleges, that John N. Copeland and complainant were for many years, and up to the death of said Copeland, mercantile partners; that partnership turned out insolvent, and that complainant had paid a large portion of the partnership debts, out of his private funds; that being a brother-in-law of said Cannon, and desirous of aiding his sister, who was the administratrix and widow of said Cannon, and of saving the estate to the heirs, he had bought for himself an estate lot, sold by order of the probate court, and which was about to be sold far below its value, and gave his note therefor, for $4,475; that he also bid in for the estate, two other lots, which were about to be sacrificed; and afterwards by, and under an agreement and contract

with said administratrix, had erected out of his own funds upon the two estate lots, so bid in for the estate, which were town lots in the city of Eufaula, a large brick building, at the cost of $5,740 36; that on account of said improvements so built by complainant, the lots which, otherwise, would have been a charge to the estate, brought large rents, incomes and profits thereto.   The bill alleges that the administrator *de bonis non*, holds the note for the lot purchased by complainant; will not account with him for the improvements so erected on the estate property, out of complainants' own private funds, but intends to collect the said note in full.   The bill prays, "that an account be decreed between complainant and said estate concerning the matters set forth in the bill, and finally to decree whatever sum is found to be due complainant shall be paid him by the administrator and heirs of said estate," or that certain property of the estate, mentioned in the bill, be sold in default of such payment, to discharge and satisfy complainants' claim.   The defendants demurred to the bill for want of equity : 1. Because the contract with said Caroline E. Copeland, as administratrix, is void, because of the statute of frauds; and, 2. Because Caroline E. Copeland, as administratrix, had no authority to make such contract.   The chancellor sustained the demurrer, and his decree is here assiged as error.

STONE, CLOPTON & CLANTON, F. M. WOOD, PUGH & BAKER, for appellants.

SHORTER & BROTHER, GOLDTHWAITE, RICE & SEMPLE, and J. T. HOLTZCLAW, *contra.*

[No briefs came into the hands of the reporter.]

B. F. SAFFOLD, J.—It is not alleged that Mrs. Copeland had any authority, from any competent source, to make the agreement, or to incur the debt above mentioned, on account of the estate of her husband.   It was not within the scope of her general powers as administratrix.

The purpose of the bill is to charge the estate of Copeland with a debt contracted by the administratrix in her

individual capacity, without the permission of the proper court, previously obtained, and under no circumstances of necessity. To permit this, would be to invest an administrator with the absolute power of disposing of the estate of a decedent. The rights of creditors would be greatly jeoparded, and the property of minors withdrawn from the guardianship of the courts.

The decree of the chancellor is affirmed.

NOTE BY REPORTER.—At a subsequent day of the term, the following response was made to an application for a rehearing by Rice, Semple & Goldthwaite, for the appellant.

B. F. SAFFOLD, J.—The motion for rehearing is based on the great increase of value to the estate, on account of the permanent improvements erected by the appellant, on the real property. It is insisted that the distributees should not enjoy the benefit of the enhanced value, at the expense of the appellant, and that it is the province of the chancery court to ascertain what increase of price results, *exclusively*, from the appellant's outlay of money in the erection of the buildings, and to decree it to the appellant.

If this were admissible, it would destroy, in a great measure, the control which the probate court ought to have over the estates of decedents, and subject these estates to great peril, by the speculative disposition of administrators and others. It would often make necessary, the sale of cherished property, the retention of which, by the owners, would be more desirable than the pecuniary value. It would also introduce endless complications to ascertain the value of these improvements. The court deems it best to adhere to the decision made.

The motion to rehear the cause is overruled.